### Jordan *et al. vs.* Gaulden, next friend.

1. Where an application for injunction was heard upon the bill, answer and exhibts attached to each of them, without other proof, they were a part of the record in the case, and there was no necessity to copy them in the bill of exceptions.

(*a.*) Where there are several defendants to a bill in equity, and from a judgment granting an injunction one of the defendants desires to except, it is not necessary for him to bring up his co-defendants in the bill and to serve them with the bill of exceptions and writ of error.

2. The grant or refusal of an injunction is largely in the discretion of the judge, and unless he has abused that discretion, this court will not interfere.

(*a.*) Had the defendants in the bill relied solely on the demurrer filed thereto, there might perhaps have been no ground left to the chancellor for the exercise of his discretion, but when they went further and filed an answer in aid of the demurrer, and that answer was not full as to all the matters set forth in the bill, this court cannot say that there was not something, in view of the peculiar facts of the case, that might not be seized upon to arrest the sale until the complainant's rights could be looked into

(*b.*) The complainant's rights, if any she has, do not depend upon the sufficiency of the evidences of her title, but upon an effort to trace her funds into the property in controversy, and the amount invested, and the specific property in which it is thus invested, is left in doubt, which may be cleared up upon a full hearing.

(*c.*) The frame of this bill is imperfect, and some necessary allegations are either wholly wanting, or are deficient in fullness or in certainty, but these defects may be cured by amendment.

(*d.*) It is not apparent that the objection of multifariousness or misjoinder of parties and causes of action is well founded.

(*e.*) The defence, if not entirely, is largely technical, which is a circumstance not to be overlooked in requiring an investigation of the dealings between these parties, so far as they affect complainant's rights.

(*f.*) This court has not treated the bill and its exhibits as evidence, as they certainly are not, any further than they are made effectual for that purpose by what the answer discloses or by what it fails to disclose.

(*g.*) The verification of a bill by a next friend, who swears to nothing of his own knowledge going to show the rights of the complainant, except the use of certain land in which she claims an interest for the purpose of making turpentine, and consequent injury thereto, would not be sufficient, without more, to authorize the grant of an injunction.

(*h.*) It was discretionary with the judge to impose terms as to the grant of this injunction. He has not seen proper to do so, and this court has no power to compel him to exercise it; if it had, it would not control his discretion in this case.

(*i.*) Any modification of the injunction that may be deemed proper can, and doubtless will, be made, upon application to the chancellor. No such question was passed upon by the judge when the case was before him, and it is still in his power to order it, if he shall think it right to do so.

December 19, 1884.

Mamie L. Gaulden, a minor, by her next friend, D. L Gaulden, filed her bill against R. Jordan and J. W. Holliday, composing the firm of Jordan & Company, her mother, Mrs. Laura G. G. Winn, and the sheriff of Liberty county, alleging, in brief, as follows:

Complainant is a minor, aged 14, a daughter of Wm. B. Gaulden, who died in Liberty county in the year 1873 leaving, as his only heirs, his widow (who afterwards married Theo. N. Winn, a resident of Brooks county) and complainant; the estate of Gaulden was large, but insolvent, and in January, 1873, a year's support of $1,250 each was duly set apart to the widow and child, a copy of said proceedings being set out in exhibit " A." attached to bill; that no part of said year's support has ever been paid to complainant, but that her mother received the part belonging to complainant ($1,250), and invested of it $45 in the Coney flat tract of land, $20 in five building lots in the town of Hinesville, $55 in 600 acres of the Rice Hope tract, lying east of the Atlantic and Gulf Railroad, and $6 in the tract of land lying west of Horse Creek, containing 390 acres, purchasing the above described lands on the 6th of July, 1864, at the sale of the administrator of said estate, and taking deeds from the administrator to herself and complainant jointly; said lands lying in Liberty county, and more fully described in the exhibits "B, 1, 2, 3 and 4." On August 20th, 1877, Mrs. Winn, complainant's mother, invested $825 of the year's support belonging to complainant in the balance of the Mill Haven and Rice Hope

tracts of land, containing 4,263 acres, which were conveyed
to her on the 20th of August, 1877, by the sheriff of Liberty
county, the said tracts of land being in Liberty county,
and more particularly described in exhibit "C." By mis-
take or inadvertence in the draftsman of said sheriff's deed
to the Mill Haven and Rice Hope tracts, the name of com-
plainant was omitted or left out of the deed. Mrs. Winn
is now due her the balance of said year's support, amount-
ing to $299, besides interest. The administrator of said
estate filed a bill to marshal the assets, and, in that case,
Mrs. Winn obtained a decree that all of the property of
the estate be sold; that out of the proceeds, the expenses of
administration and the year's support before mentioned
be first paid, and afterwards, the decree obtained by Mrs.
Winn. At the November, 1883, term of Liberty superior
court, Jordan & Co. foreclosed a mortgage against Mrs.
Winn, not only upon the above described land of Mrs.
Winn, but also upon the above described lands of com-
plainant, for the sum of $550 and costs, and that a *fi. fa.*
has issued, which has been levied upon all the lands above
described of Mrs. Winn and complainant, except 300 acres
of the Mill Haven tract, by the sheriff of Liberty county
who is about to sell the property, having already made
advertisement. The lands have been "turpentined" and are
of very little value at the present time, the greater por-
tion being low palmetto flats, and unfit for cultivation;
and, if the lands are sold, they will not bring enough
to pay the claims of Jordan & Co. and complainant, and
that the claim of complainant ought to be paid before that
of Jordan & Company. There is no other property of Mrs.
Winn, out of which complainant's debt can be made, and
the sale would put her claim in great jeopardy. Jordan &
Co. have boxed the four tracts of land, amounting to 1,492
acres, set forth in exhibit "B, 1, 2, 3 and 4," and worked
them for turpentine for two years; have received and sold
the turpentine therefrom, of the value of $2,000, or other
large sum, and have "girded" and injured the lands of

v 73-14

complainant in the sum of $2,000.00, or other large sum. She has never received anything therefor, and being a minor, could not consent to the use of her lands or its damage, and Jordan & Co. are justly indebted to her $2,000, or other large sum, for the turpentine and damages. Jordan & Co. have damaged her one-half interest in the Mill Haven and Rice Hope tracts, containing 4,263 acres, and more fully described in exhibit "C," in the sum of $10,000, by taking the turpentine, boxing the trees and exposing the timber to fire; and that for this they are indebted to her in the sum of $10,000, or other large sum. The mortgage *fi. fa.* of Jordan & Co. is not a valid claim upon the property of Mrs. Winn; the debt was a loan by Jordan & Co. to her husband, who prevailed upon, and persuaded and coerced Mrs. Winn into giving the mortgage upon her lands and her daughter's, described in exhibits "B, 1, 2, 3 and 4" and "C," Jordan & Co., well knowing that it was a debt of the husband. The said husband got the money and used it for his own purposes, and Jordan & Co. charged the loan to the husband on their books; and therefore the debt is not one of Mrs. Winn's. Jordan & Co. had full notice that complainant owned the lands described in exhibit "B, 1, 2, 3 and 4." The Aultman Taylor Company holds a mortgage of $1,000 upon the 300 acres of the Mill Haven tract, not covered by the mortgage of R. Jordan & Co., and Mrs. Winn is unable to pay the debts against her. Complainant has never had a guardian appointed for her, and is now without one. The administrator of the estate of Gaulden has never been discharged. Both members of the firm of Jordan & Co. reside in the state of South Carolina. The prayer was that Jordan & Co. be restrained from collecting their *fi. fa.*, and be decreed to pay complainant the damages claimed; that Mrs. Winn be enjoined from disposing of said land, and that she be decreed to pay complainant the balance due her of the year's support, and also the amount claimed by Jordan & Co., instead of paying it to them; or that the land be sold, and that com-

plainant be first paid from the sale her year's support and interest, and that Jordan & Co. be decreed to pay to complainant the said sum of $550, in case it is collected; and that said sum of money, if collected, be held in said court, and not allowed to go out of the state; that said sheriff's deed, of which exhibit "C" is a copy, be corrected so as to insert complainant's name, and thus speak the truth; or that Mrs. Winn be decreed to make her a title to an undivided one-half interest in the Mill Haven and Rice Hope tracts. General relief was prayed for.

Discovery was waived as to all of the defendants, except Mrs. Winn, and the prayer was that she make full answer.

There was also a prayer to enjoin the sheriff from selling, until the right of complainant could be ascertained and decreed; to perpetually enjoin him from selling any of the lands of complainant under the said mortgage *fi. fa.*, and from paying over the money collected; or that may be collected, under the *fi. fa.* to Jordan & Co., or their attorneys, and that he hold the same subject to the order of the court.

Then follows the usual prayer for subpoena against Mrs. Winn, Jordan & Company, and the sheriff of Liberty county.

Subsequently, and before the hearing under the order to show cause, Mrs. Winn's husband (Theo. N. Winn) was made a party defendant.

The exhibits to the bill were as follows:

Exhibit "A" consisted of a certified copy of the year's support proceedings, showing that $2,500 were duly set apart to the widow and minor child of Wm. B. Gaulden, with the order that the administrator pay this amount to Mrs. Winn (then Mrs. Gaulden).

Exhibit "B 1" consisted of a copy of a deed made by E. P. Miller, as administrator of the estate of Gaulden, on 6th of July, 1874, to Laura G. Gaulden and child, whereby, for a consideration of sixty dollars, he conveyed property described as follows: " All that tract or parcel of land, con-

taining five hundred acres, more or less, and known as the Ooney Flat tract, lying and situate in the 17th district G. M., said county of Liberty, and bounded as follows." (There are no boundaries and no further description; the *tenendum* clause then follows.) There is on this deed a memorandum, purporting to be a copy of a certificate of record, made in Liberty county, October 1, 1874.

Exhibit "B 2" consisted of a copy of a deed made by the same administrator, on the 6th of July, 1873, to Laura G. Gaulden, for self and as next friend of her infant child, Mary G. For a consideration of forty dollars, the deed conveys property therein described as follows: " Five building lots, being in the said town of Hinesville, and numbered, each lot containing ——— acres, more or less."

This is followed by a memorandum of the record made October 3rd, 1874.

Exhibit "B 3" consisted of a copy of a deed made by the same administrator, on the 6th day of July, 1874, to Laura G. Gaulden and child. For a consideration of $110, property is conveyed, described in the exhibit as follows: "All that tract of land lying east of the Atlantic and Gulf Rail. road, being a part reserved from the homestead laid off from the Rice Hope place, containing 602 acres, more or less, and bounded as follows: north and west by lands of G. G. W. Walthour, east by lands of P. W. Fleming, and south by the Atlantic and Gulf Railroad."

There is a memorandum or record made October 20, 1874.

Exhibit "B 4" consists of a copy of a deed made by the same administrator to Laura G. Gaulden and child, on the 6th of July, 1874, whereby, for a consideration of twelve dollars, he conveys property described in this exhibit as follows: " All that tract of land lying west of Horse Creek, containing three hundred and ninety acres, more or less, and bounded as follows." (No boundaries and no further description.) This purports to have been recorded October 1, 1874.

Exhibit "C" consisted of a copy of an execution, issuing

out of the superior court of Liberty county, on the 5th day of June, 1876, in favor of Laura G. Winn, lately Laura G. Gaul·den, and against the property of the estate of Wm. B. Gaulden, in the sum of nine thousand dollars principal, with interest from the 1st day of January, 1859, based on a decree rendered May 17, 1876. The levy is endorsed on same, and also a memorandum of the sheriff setting forth that he had sold all of the real property and nearly all of the personal property to Mrs. Laura G. Winn. Then follows, as a part of the same exhibit, what purports to be an uncertified copy of the sheriff's deed to Mrs. Winn. This recites that Mrs. Winn bid in the property at the sale, and for the bid of $1,650, he conveys to her property described as follows : " The aforesaid two tracts of land within the said county of Liberty, and known respectively as the Mill Haven and Rice Hope plantations, containing in the aggregate the sum of four thousand two hundred and sixty-three acres."

The endorsement on the *fi. fa.* states that the Mill Haven tract contains 2,455 acres and the Rice Hope tract 1,803, and gives the boundaries of each.

Then follows a record made October 3, 1877.

Exhibit "D" is a certified copy of the verdict and decree in the equity suit, brought by the administrator of the estate of Gaulden to marshal assets, wherein Mrs. Winn obtained her decree.

The only affidavit to the bill was by the next friend of complainant, and was as follows:

"In person came before the undersigned D. L. Gaulden, next friend of Mamie L. Gaulden, complainant in the foregoing bill, who, being sworn, says that what is contained in the above bill, so far as relates to his own act or deed, is true to his own knowledge. And deponent knows of the damages referred to, and as alleged of his own knowledge, and that which refers to the act or deed of any other person, he believes to be true."

Jordan & Company alone showed cause against the grant of an injunction, and alone filed an answer. They filed a demurrer on the following grounds :

(1.) Because there is no equity in the said bill as to these defendants.

(2.) Because the complainant shows that she has an adequate remedy at law as to these defendants.

(3.) Because the complainant does not set forth any cause of relief as to these defendants.

(4.) Because the said bill is multifarious.

(5.) Because there is a misjoinder as to these defendants.

The bill of exceptions states that they also urged that no bond had been given by complainant to answer in damages to respondents.

The answer of Jordan & Company was, in brief, as follows:

They are residents of the state of South Carolina and are the plaintiffs in the mortgage *fi. fa.* mentioned in the bill, which has been levied upon the property mortgaged to them; they attach a copy of the mortgage to their answer, and mark it exhibit "A." They took the mortgage in entire good faith, not doubting that the mortgagor, Mrs. Winn, was the absolute and exclusive owner of all the property mortgaged, they confiding in the warranty which she made in the mortgage and the assurance received by them that she was such owner. They expressly and positively aver that they had no knowledge or notice of any claim or interest of the complainant, the said Mamie G. Gaulden, in the property or in any part of it until after the filing of the present bill. This claim has surprised them, and the mortgage would never have been taken with any notice of it, or any reason known or suspected by them, for questioning the title and ownership of Mrs. Winn as to all of the property. The amount of the note secured by the said mortgage ($1,475.56) represents the balance due to them for advances made to Mrs. Laura G. Winn. These advances were made reluctantly and unwillingly, but as a matter of accommodation and with the full assurance that they were being amply secured. They employed an attorney at law, resident and practicing in the county

of Liberty, to draw the mortgage and see to its being proper security; and they presumed that this duty would be properly attended to. They always supposed and understood that these advances were being made to Mrs. Winn; they made them to her and upon the receipt of her husband as her agent, they believing that she was cognizant of these receipts. They say, however, that Mrs. Winn pleaded in Liberty superior court that the debt was her husband's, and they obtained judgment for $550.00 of the amount claimed, and will therefore lose, in any event, the greater part of their money advanced in good faith. They deny the interest of complainant in the property mortgaged, or any part thereof, and they call for strict proof as to all of these allegations. They deny that, by mistake or inadvertence of the draftsman, the name of the complainant was left out of the deed to the Mill Haven and Rice Hope tracts, and say that, in any event, such mistake or inadvertence ought not to affect or prejudice them.

They deny that they have improperly worked the lands mentioned by complainant, and that they have inflicted any damage upon the trees, except such as was necessarily incident to their boxing and working for turpentine purposes, for which right they have paid Mrs. Winn in full. They say that they are not indebted to Mrs. Winn or complainant for such damage or for any other matter or thing. Mrs. Winn, in the suit on the note secured by the mortgage (a suit determined at the November, 1883, term of Liberty superior court), in addition to her other pleas, pleaded that they had damaged her and the leased property in the sum of several thousand dollars, on account of the improper boxing and working of the trees, and attempted to show such damages, but the effort failed, and this claim was disallowed.

They further answer that they worked for turpentine purposes the lands mentioned in the lease to them made by Mrs. Laura G. Winn, on the 19th day of March, 1880, and the supplement thereto, dated March 22, 1880, and no

other lands; that they confined themselves to these lands and fully performed their contract with Mrs. Winn; that she leased these lands to them for the purposes expressed in the lease as her lands, and they have never supposed that the complainant was interested in any way therein, and they now .deny such interest and insist upon strict proof. They attach to their answer a copy of the lease and the supplement thereto as exhibit "B."

They say that they are not informed as to the matter mentioned in the bill concerning the estate of William B. Gaulden, the year's support and the indebtedness on the part of Mrs. Winn to complainant; that they have nothing to do with these matters, and have never been connected therewith in any way.

The exhibits to the answer were as follows:

Exhibit "A" consisted of the copy referred to by defendants as a copy of their mortgage. It was executed in Liberty county by Mrs. Winn to them, on the 18th of March, 1881, and to secure a note in the sum of $1,475, due on the 1st of January, 1882, with interest from maturity at the rate of 10 per cent per annum; the mortgage contained a general warranty of title, and described the mortgaged property as follows: "One tract, known as the Mill Haven tract, comprised of originally several other tracts lying situate and being in said county and state, and containing in the aggregate, as consolidated by a survey of William Hughes, Jr., made January 24th, 1873, twenty-four hundred and fifty-five acres, more or less, and bounded as is set forth in a plot made by the said William Hughes, Jr., January 24, 1873; one other tract, known as the Rice Hope tract, situate and being in said county and state, composed of originally several other tracts, and containing in the aggregate, as consolidated by a re-survey of William Hughes, Jr., made April 30, 1853, twenty-one hundred and ninety-one and two-tenths acres, more or less, and bounded as is set forth in a plot made by said William Hughes, Jr., April 30, 1853; said re-surveys and plots having been made for Col. Wil-

liam B. Gaulden, late of said county and state, deceased; one other tract, known as the Coney Flat, situate and being in said county and state, and containing five hundred acres, more or less, and joining lands of John M. Dorsey; and the Daniels tract, on which Daniels' tract is located a steam saw-mill, together with four lots situate, lying and being in the village of Hinesville, and said county and state."

On the face of this mortgage is the following, signed by R. Jordan & Co.:

'This mortgage is extended to April, 1882, and the house and three hundred acres of land, including all the buildings and mill, are exempt from the operation of this mortgage.'

Exhibit " B " consisted of a copy of the lease, signed by Mrs. Winn and Jordan & Co., on the 9th of March, 1880, in which Mrs. Winn leases to them for two years, for turpentine purposes, the Rice Hope, Mill Haven, Coney Flat and Gearaidian tracts, containing in the aggregate six thousand acres, more or less. The lease contains a covenant in the following language:

" And the said Mrs. Laura Glenn Winn, for herself, her heirs, executors and assigns, doth covenant, promise, grant and agree to and with the said Messrs. Halliday and Jordan, their heirs, executors and assigns, paying the yearly rental and performing the covenants aforesaid, shall and lawfully may, peaceably and quietly have, hold, use, occupy and possess and enjoy the said demised premises for the use above mentioned during the term aforesaid without the lawful let, suit, trouble, eviction, molestation or interruption of the said Mrs. Laura Glenn Winn, her heirs or assigns, or any person or persons whatsoever."

The supplement to the lease is not material.

Both defendants swore positively to the foregoing answer.

The injunction was granted, and Jordan & Company excepted.

In the Supreme Court, a motion to dismiss the writ of error was made, because the bill of exceptions did not contain copies of the bill, answer and exhibits to both, which were in evidence before the chancellor; and because

Mrs. Winn, Mr. Winn and the sheriff (who were co-defendants of Jordan & Company) were not brought up as parties or served with the bill of exceptions.

Denmark & Adams, by J. H. Lumpkin; E. P. S. Denmark, for plaintiffs in error.

D. L. Gaulden, by Harrison & Peeples, for defendant.

Hall, Justice.

1. There is nothing in the motion to dismiss this writ of error. The application for the injunction seems to have been heard upon the bill, answer and the exhibits attached to each of them. No other proofs were offered or considered, except such as these pleadings afforded; they are a part of the record in the case, and there was no necessity to copy them in the bill of exceptions. 10 *Ga.*, 1 (3); 62 *Id.*, 617 (1); 41 *Id.*, 293.

It was not necessary for the plaintiffs in error to bring up their co-defendants in the bill, and to serve them with the bill of exceptions and writ of error. 68 *Ga.*, 463; *Ib.*, 496.

2. In this case, as in all others, the granting or refusal of the injunction prayed was largely in the discretion of the judge, and, unless he has abused that discretion, we cannot interfere with its exercise. · Had the defendants in the bill relied solely on the demurrer filed thereto, there might, perhaps, have been no ground left to the chancellor for the exercise of his discretion, but when they went further, and filed an answer in aid of the demurrer, and that answer was not full as to all the matters set forth in the bill, we cannot say that there was not something, in view of the peculiar facts of this case, that might not be seized upon to arrest this sale until the complainant's rights could be looked into. She is a minor without a guardian; her mother, who is a co-defendant with the plaintiffs in error, seems to have dealt with them in such a manner as to involve in their dealings the entire patrimony of this child.

It is not certain that these plaintiffs in error did not have such knowledge of the facts, as to put them upon inquiry, and to charge them with notice of the complainant's rights; indeed, from the face of the title deeds exhibited to her bill, however defective in form and substance they may have been, of which the defendants evidently had knowledge, there was enough to excite them to investigation, which, had it been properly and fairly pursued, would probably have revealed her whole interest, if any she had, in the property in question. The complainant's rights, if any she has, do not depend upon the sufficiency of the evidence of title. She had no part in their execution, and is not responsible for their insufficiency; from her tender years, she was incapable of protecting her rights, even if she had been consulted, and she does not appear to have been consulted in the matter. She is endeavoring to trace her funds into the property in controversy. The amount invested, and the specific property in which it was thus invested, is left in doubt; and this doubt, upon a full hearing, may be cleared up. Her mother, who is made a defendant in this bill, and who, it is alleged, made these investments, has not answered it, as she was required to do. The bill seems to have been hastily gotten up by a *prochein amy*, who had no personal knowledge of the facts involved, and who had to rely on such only as were revealed by others, and were brought to light by what seems to have been an insufficient scrutiny into the matter.

It is undoubtedly true that the frame of this bill is imperfect, and that some necessary allegations are either wholly wanting, or are deficient in fullness and certainty; but these are defects that may be amended.

It is not apparent that the objection of multifariousness, or rather, the misjoinder of parties and causes of action, is well founded. Whether it exists or not will depend largely upon disclosures to be made, as to the extent to which the mortgaged property is chargeable with complainant's demand, and the knowledge which may be

brought home to the plaintiffs in error as to the improper division of her funds, and their subsequent participation in rendering this division effectual in defeating her rights. They are non-residents, and the mother, with whom they co-operated in this matter, is utterly insolvent, perhaps made so, in some measure, by their dealings with her.

Their defence, to say the least, if not entirely, is largely technical, which is a circumstance not to be overlooked, in requiring an investigation of the dealings between these parties, so far as they effect complainant's rights.

We have not treated the bill and its exhibits as evidence, as they certainly are not, any further than they are made effectual for that purpose by what the answer discloses, or by what it fails to disclose. Nor do we think its verification sufficient, without more, to authorize the grant of the injunction.

It was discretionary with the judge to impose terms as to the grant of this injunction. He has not seen proper to do so, and we have no power to compel him to exercise it; and even if we had, we should not, in this instance, feel disposed to exert that power. The land is here, and cannot be disposed of pending the litigation. The complainant is an infant in indigent circumstances, and to require of her a bond of indemnity might be simply to deny her a hearing.

Under all the circumstances, we are of opinion that it is due to justice that this case be fully and fairly investigated. Any modification of the injunction that may be deemed proper can, and will doubtless, be made, upon application to the chancellor. No such question was passed upon by the judge, when the case was before him, and it is still in his power to order it, if he shall think it right to do so.

Judgment affirmed.