21883. MARYLAND CASUALTY COMPANY *v.* SALMON.

DECIDED APRIL 29, 1932.

*Wright & Covington,* for plaintiff in error.

*Porter & Mebane,* contra.

LUKE, J. Harry Salmon brought an action against Maryland Casualty Company to recover $2,000, alleged to be due plaintiff by reason of the fact that L. B. Jolly, deputy sheriff of Floyd County, had breached his official bond, on which said company was surety, by unlawfully shooting and beating plaintiff. The trial resulted in a verdict and judgment for plaintiff in the sum of $1,000, and defendant is now excepting to the judgment overruling its motion for a new trial.

The petition alleges, in substance, that on the night of July 3, 1930, petitioner and his brother, Dick Salmon, went to Shannon to attend a dance; that they "parked their automobile" about one hundred and fifty yards from the dance; that, after attending the dance, petitioner and his said brother, accompanied by a young lady, went to said automobile for the purpose of going home and taking the young lady home; that L. B. Jolly and three or four other persons came up to "said automobile of petitioner and his brother," and Jolly said he was going to search the car for liquor; that petitioner told Jolly that there was no liquor in the automobile, and that he could not search "our automobile" without a search warrant; that thereupon Jolly cursed petitioner, said he needed no search warrant, and stated that he was going to search the car anyway; that said automobile was locked, and Jolly told petitioner and his brother that if it was not opened he "would break the damned glass out of the windows and search it anyway;" that said men with Jolly had pistols, and petitioner had been informed that they had been deputized by Jolly to assist him in "searching petitioner's car;" that petitioner said that he would wait and let said men guard him and his brother and said automobile until Jolly could get a search warrant; that Jolly then started towards said automobile for the purpose of breaking the glass out of the windows and searching it, and "threw one link of the handcuff around petitioner's arm, and . . struck petitioner with a blackjack;" that "for the purpose of keeping said deputy sheriff from illegally searching said automobile and assaulting petitioner further," petitioner knocked Jolly down with his fist; that Jolly immediately got up and at-

tempted to kill petitioner by shooting him with a pistol within half an inch of his heart, the bullet entering the body from the front and lodging "in the back part of petitioner's body;" that neither petitioner nor his brother had any weapon; that after shooting petitioner down, Jolly and his confederates overpowered petitioner and his brother and handcuffed them together, and beat petitioner with blackjacks and other blunt instruments; that said shooting and beating of petitioner was without mitigation or excuse," and "inasmuch as petitioner had committed no crime, and inasmuch as said officer had no search warrant  .  .  and had no warrant of any kind," he had no right either to search said automobile or to attack. petitioner; and that "said acts on the part of said deputy sheriff  .  .  were wrongful acts committed under color of his office, and an improper performance of duty imposed upon him by law, and was not a well and faithful performance of the duties .  .  of his official position as a deputy sheriff of Floyd County," etc.

The effect of the defendant's answer was to put the plaintiff upon proof of the material allegations of his petition. However, the defendant did admit that by virtue of his office, Jolly "had authority to search automobiles containing intoxicating liquors, either under a search warrant, or upon seeing intoxicating liquors in an automobile," but averred that Jolly had also "a right to search an automobile for intoxicating liquors in the event he had reasonable grounds to believe the same contained intoxicating liquors."

A motion to dismiss the writ of error in this case avers that L. B. Jolly was vouched into court by Maryland Casualty Company; that he thereby became "directly interested in the decision complained of, and is a necessary party to said bill of exceptions;" that Jolly had not been served with the bill of exceptions and had not acknowledged or waived service thereof;" and that the writ of error should therefore be dismissed.

"The rule that all persons interested in sustaining the judgment complained of must be made parties to the bill of exceptions can not apply to a person not a party to the case in the trial court." *Chason* v. *Anderson,* 119 *Ga.* 495 (46 S. E. 629); *Continental Trust Co.* v. *Sabine Basket Co.,* 165 *Ga.* 591, 594 (141 S. E. 664); *Morse* v. *Turner,* 20 *Ga. App.* 108, 110 (92 S. E. 767). Section 5821 of the Civil Code (1910), reads: "Where a defendant may

have a remedy over against another, and vouches him into court by giving notice of the pendency of the suit, the judgment rendered therein will be conclusive upon the party vouched, as to the amount and right of the plaintiff to recover." "This section provides a means by which a defendant who is already a party may, at his option, call upon one who may be responsible to him, to assist him in the defense, or may, by vouching such a one, conclude him as to the amount of his liability to himself, and thus leave but one question in future open between them, to wit, the question as to whether he had a right to vouch him. . ." *Armour Car Lines* v. *Summerour*, 5 *Ga. App.* 619, 622 (63 S. E. 667). The bond in the instant case was a joint and several obligation (Civil Code of 1910, §§ 291, 296; *Morrison* v. *Slaton*, 148 *Ga.* 294 (96 S. E. 422)), and while Jolly would have been a proper party to the action, he was not a necessary party. The plaintiff elected to proceed against the bonding company alone. So far as the record shows, no further steps were taken in regard to Jolly than to vouch him into court, and the only connection he had with the trial of the case was to testify as a witness. We do not think that Jolly "became a party to said suit by being vouched into court," as contended by defendant in error; and, if this conclusion be correct, Jolly was no proper party to the bill of exceptions. However, if the mere vouching of Jolly into court could be said to make him a party, he was not a necessary party to the bill of exceptions. "Where, in a suit against two codefendants, the verdict and judgment are adverse to the defendants, and one of them makes a motion for a new trial, which is overruled, the movant can except to the judgment overruling his motion, and bring the case to the Supreme Court without making the other defendant a party to the bill of exceptions; and a failure to do so will not work a dismissal of the writ of error. *Ruffin* v. *Paris*, 75 *Ga.* 653; *Jordan* v. *Gaulden*, 73 *Ga.* 191." *Turner* v. *Newell*, 129 *Ga.* 89 (58 S. E. 657). To the same effect is *Durrence* v. *Cowart*, 160 *Ga.* 671 (129 S. E. 26), and the rule is recognized in the recent case of *Butler* v. *Kendrick*, 172 *Ga.* 322 (158 S. E. 13). Therefore this court refuses to dismiss the writ in the case sub judice.

Jolly had no warrant for either Harry or Dick Salmon, and no warrant to search the automobile. He testified that he could have procured a search warrant, but that he did not think that he needed

any. He based his right to search the car upon his statement that James Locklear had told him that "Harry and Dick Salmon had some whisky," and the allegation that he knew that the Salmons had the reputation of dealing in whisky. James Locklear swore that he did not tell Jolly that the Salmons had whisky, and that he did not smell whisky on either of them. From Jolly's testimony it appears that about the first thing he did was to "run his hands over the boys," and that neither of them had weapons or whisky. Jolly further swore that there was no violation of law of any kind until the trouble occurred with the Salmons. Jolly testified in effect that when he started towards the automobile the Salmon brothers grabbed him, and he called for help in order to get free; that plaintiff grabbed his blackjack out of his hand and knocked him down with it; that he shot to protect himself at a time when he was lying on the ground, with blood almost obscuring his vision because of the beating administered to him by plaintiff, and plaintiff was advancing upon him with something in his hand; and that he never beat plaintiff after the shooting. Plaintiff testified, in substance, that just as he and his party were preparing to get in the automobile and leave the dance, one Scoggins, who had been deputized by Jolly, "shoved two guns in his kidneys," and Jolly said that he was going to search the automobile for liquor; that plaintiff told Jolly that there was no liquor in the car, and that he and his party would wait under the surveillance of Jolly's deputies until Jolly could get a search warrant; that Jolly said, with an oath, that he would knock the glass out of the car if the door was not opened, and struck plaintiff with a blackjack, and "slung a link of a handcuff" on his arm; that plaintiff then knocked Jolly down with his fist; that Jolly said "blackjack them, boys," and several of Jolly's party fell upon plaintiff; that plaintiff procured Jolly's blackjack and pitched it to Dick Salmon, and Dick "got those fellows off" of him; that Dick was using Jolly's blackjack, and plaintiff was using his hands; that Jolly came to plaintiff again, and again plaintiff knocked him down with his fist; that Jolly then shot plaintiff; and that after the plaintiff and his brother had been handcuffed together. when the plaintiff had been shot, Jolly struck plaintiff over the head with said blackjack.

We have not given all the testimony of the plaintiff and Jolly, and do not deem it necessary to set out the testimony of the other

witnesses in the case. We have carefully read the voluminous brief of evidence, however, and are well satisfied that the evidence supports the verdict, and that the trial judge properly overruled the general grounds of the motion for a new trial.

Several of the special grounds complain that the court submitted to the jury the question as to whether or not said automobile "was the automobile of the plaintiff, or was in his possession and control at the time of the alleged injury complained of," and then charged them the constitutional provision inhibiting illegal searches and seizures (Civil Code of 1910, § 6372). Error is alleged "for the reason that the evidence in said case, without contradiction, showed that the automobile was not in the possession and control of the plaintiff in said case, but was in the possession and control of the brother of plaintiff in said case, said fact having been admitted under oath by the plaintiff in the case, and therefore said charge submitting to the jury the principle of search and seizure . . was calculated to confuse and mislead the jury in said case, and was not adjusted to any of the evidence or issues in said case . ."

The allegations of the petition were sufficient to raise the question of illegal searches and seizures, and while it is true that the testimony is uncontradicted that the automobile belonged to Dick Salmon, and that Dick had the keys to it, yet we are by no means sure that, under all the facts and circumstances of the case, there was not some ground to warrant the conclusion that on the particular occasion in question the custody and control of the car was in both the Salmon brothers. In this connection we quote as follows from plaintiff's testimony: "We spoke to Mr. Blalock about parking our car there. . . We couldn't get a place to park, so we drove up to Mr. Blalock's filling station and got permission to park the car there. . . We fastened the doors of the sedan and went back to the dance. . . We got out to our car and was fixing to get in it and come to town, . . and I says to Mr. Jolly: 'If you want to get a warrant to search the car, we will wait here with these deputies—we will be glad to.' . . Jolly said he understood that we had liquor in the car, and said he was going to search it, and I told him . . we had none, and begged him to go off and leave us alone. We did not want any trouble. At the time we got to the car and Jolly wanted to search it, all the windows were up and the doors locked. We always do that when we park

the car anywhere at night. . . I could have unlocked the car and let him do it. . . That car belonged to Dick. Jolly had a conversation with Dick at the car, and was talking to both of us." Dick Salmon testified: "We went up in my car. Harry had nothing to do with the car. . . Harry asked him what he was going to search it for. . . We didn't have any liquor, and I told him there wasn't any liquor in the car, and he couldn't search it unless he had a search warrant. . . When we asked what he wanted . . he said he was going to search it for whisky. Both of us talked to him, . . both of us told him if he wanted to leave somebody there with us and go and get a search warrant, it would be all right."

Furthermore, the verdict must have hinged largely upon what transpired after Jolly had searched the Salmons and found no weapons or liquor on their persons—that is to say upon whether plaintiff's or Jolly's version of the actual fight was true. In this connection, we quote from the charge as follows: "Even if L. B. Jolly attempted to make an unlawful search of the plaintiff's automobile, and even though you find that such search would have been an unlawful search of such car, I charge you that this gave the plaintiff in this case no right to assault L. B. Jolly, and that L. B. Jolly, by attempting to make such search, even though the same was illegal, did not forfeit his right to defend himself against an assault upon him by the plaintiff, if such assault was made, solely because he may have been guilty of a wrongful act in the past, but I charge you that, under such circumstances, and even though the original attempt to search this automobile may have been unlawful upon the part of L. B. Jolly, yet if, during the course of the argument resulting in such effort to make such search, the plaintiff in this case assaulted L. B. Jolly, and L. B. Jolly sought to defend himself against a serious bodily harm, and, acting under the fears of a reasonable man, shot and assaulted the plaintiff, then I charge you that under such circumstances L. B. Jolly would have been justified in assaulting and shooting the plaintiff, and it would be your duty, under the circumstances, to return a verdict in favor of the defendant."

Under the facts of this case, and in the light of the charge as a whole, we decline to grant a new trial for any reason assigned in the grounds under consideration. This holding disposes of special grounds 1, 2, 3, 4, 5, 6, and 9.

We hold that the court did not commit reversible error in failing to give a requested charge that "it is wholly immaterial to any issue in this case whether such search was legal or illegal," etc. Nor do we think it ground for reversal that the court instructed the jury in the language of the Penal Code (1910), § 74, and told them that "this right of mutual protection as between brothers stands upon the same footing as that of parent and child."

*Judgment affirmed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*